In re McDONALD TRANSP. CO.

(District Court, D. Massachusetts. March 20, 1925.)

No. 1688.

1. Shipping ⟜131—Leaky vessel liable for all water damage to cargo, in absence of special arrangement as to stowing and dunnaging.

In absence of special arrangement between shipowner and charterer, leaky vessel is liable for entire water damage, unless dunnaging and stowing were jointly done by her and charterer, and fact that charterer's stevedore attended to ballasting and dunnaging of vessel does not relieve vessel, in absence of proof of such special arrangement.

2. Shipping ⟜207—Owner of new wooden schooner held entitled to limit liability for water damage due to leaks and improper dunnaging.

As respects right to limit liability, under Rev. St. § 4283 (Comp. St. § 8021), ordinarily owner, who sends leaky vessel to sea, is not free from personal fault; but owner of new wooden ship held without personal fault, where there was no evidence of leak before commencement of voyage, and during voyage there was no opportunity for repairs, the leak being easily controlled by pumps and in no way endangering ship, though, due to improper dunnaging, cargo was damaged by water.

In Admiralty. In the matter of the McDonald Transportation Company. On petition for limitation of liability. Petition granted.

Edward S. Dodge, of Boston, Mass., Howard M. Long, of Philadelphia, Pa., and Theodore Hoague, of Boston, Mass., for petitioner.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for claimants Murfitt, Wright, and others.

Goldman & Unger, of New York City, and Arthur J. Santry, of Boston, Mass., for L. Richardson & Co.

T. Catesby Jones, of New York City, for

Merchant Fire Assur. Corporation and others.

MORTON, District Judge. It is clear that the cargo suffered water damage. The questions are whether the vessel is responsible for it, and, if so, the further question whether her owners have a right to limit their liability. It is evident from her log book that she was a leaky vessel. According to it, she made three inches of water an hour on her outward voyage. At Port Elizabeth, South Africa, some caulking was done around her hatches, decks, and waterways; but nine days out on the return voyage there is an entry in her log that she was making two inches of water an hour. In the charter party there is an unqualified warranty that the vessel is "tight." Of course, no wooden vessel of this size is absolutely tight; but the amount of water which the McDonald made far exceeded what would ordinarily be expected in a new vessel. When she was loaded at South Africa, she ought to have been dunnaged and stowed with this fact in mind. Probably the master supposed that he had overcome the leaks by the caulking which was there done; but events showed that this was not so. Moreover, even for such a vessel in good, ordinary condition the dunnaging appears to have been carelessly done.

[1] The vessel is liable for the entire damage, unless the dunnaging and stowing were jointly done by her and the charterer. In the lack of some special agreement, it is the duty of the vessel to do them properly. They are not referred to in the charter party. By it the charterer was to load the vessel. At Port Elizabeth his stevedore, Smith, also attended to the ballasting and dunnaging of the schooner. But the evidence is not sufficient to show that this was done under an arrangement which superseded and changed the duties and rights which would ordinarily exist in the situation. It follows that the vessel must be held liable for the entire water damage to the cargo.

[2] The other question is whether the petitioner is precluded from limiting its liability under R. S. § 4283 (Comp. St. § 8021), because it was not free from privity or knowledge in respect to the fault which caused the damage. Ordinarily an owner is not free from personal fault who sends a vessel to sea in a leaky condition, and at the conclusion of the argument I intimated the opinion that the petitioner was not entitled to limit its liability. Upon further consideration of the matter, especially in the light of Dupont v. Vance, 19 How. 162, 168, 15

L. Ed. 584, I do not think that conclusion can be sustained. The issue is one of fact. As a general rule, the owner would, or ought to, know whether his vessel was leaky. But here the vessel was brand new, there is no evidence of any leak developing before the voyage started, and there was no opportunity, so far as appears, to search out and repair the leak on the African coast. Moreover, the leak, although bad enough to wet the improperly dunnaged cargo, was easily controlled by the schooner's pumps, and did not grow materially worse as the voyage progressed. It in no way endangered the vessel; she was well able to keep the sea in spite of it. There is no evidence as to the cause of it, and nothing to show that the owner ought to have known about it before the voyage began. Under these circumstances, I think that the owner's lack of privity to or knowledge of the leaky condition is made out. The improper dunnaging to which the damage was largely due was also a fault without privity or knowledge on the owner's part.

Decree granting petition and claim, and referring the case to Fitz Henry Smith, Esq., as assessor, to state the damages.